George McElroy, et al., Plaintiffs-Appellees, v. William E. Cahill, Reginald DuBois and Quentin J. Goodwin, Members of and Constituting the Civil Service Commission of the City of Chicago, and James V. Fitzpatrick, Commissioner, Department of Streets and Sanitation of the City of Chicago, Defendants-Appellants.

Patrick Mowen and Thaddeus Koziol, Plaintiffs-Appellees, v. William E. Cahill, Reginald DuBois and Quentin J. Goodwin, Members of and Constituting the Civil Service Commission of the City of Chicago, and James V. Fitzpatrick, Commissioner, Department of Streets and Sanitation of the City of Chicago, Defendants-Appellants.

Gen. Nos. 52,321, 52,481.

First District, First Division.

July 28, 1969.

Rehearing denied September 2, 1969.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Ronald S. Cope, Assistant Corporation Counsel, of counsel), for appellants.

Coghlan, McGloon, Joyce and Murphy, of Chicago (John P. Coghlan, Sr. and William J. Nellis, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

This case is a consolidation of two actions for declaratory judgment brought by George McElroy, Marco Mancuso, Frank Prete, Patrick Panico and James Bowler in one suit and Patrick Mowen and Thaddeus Koziol in the other, against the Civil Service Commission and the Commissioner of the Department of Streets and Sanitation of the City of Chicago. The plaintiffs requested an order declaring the examination of April 2, 1966, for Ward Superintendent, invalid and prohibiting the Civil Service Commission from making any certification or appointments pending the outcome of this cause. The court granted plaintiffs the relief they requested and the defendants appeal.

On May 26, 1967, after a bench trial, a decree was entered finding the examination given by the Civil Service Commission of the City of Chicago for Ward Superintendent, on April 2, 1966, contravened section 10–1–7 of

the Illinois Municipal Code (Ill Rev Stats 1967, c 24, par 10–1–7) in the following respects:

A. Said examination was not competitive as required by the above-cited statute in that a training program and conference for ward superintendents and acting ward superintendents, was conducted by the Civil Service Commission in October and December of 1965 four to six months prior to said examination. Said program thereby gave to those acting ward superintendents and other personnel of the Department of Streets and Sanitation who attended and participated in said training program and conference, and who were candidates for said examination an unfair advantage over those other candidates taking the examination without benefit of said special training.

B. Said examination was not competitive as required by the above-cited statute in that a certain Ward Superintendent's Conference Manual, published by the Civil Service Commission, was distributed to selected personnel of the Department of Streets and Sanitation and access thereto was denied the general public, including the other candidates for said examination who were unable to secure copies thereof. Particularly pertinent is the fact that more than fifty percent of the questions asked in said examination were derived from the text of said Manual, copies of which were distributed to each of the participants in the training program, but not distributed to other candidates for the examination.

C. Said examination contained an inordinate number of questions which were not practical in character and did not fairly test the relative abilities of the candidates to fulfill the duties and responsibilities of ward superintendent, and said

questions did not bear a reasonable relationship to the duties and responsibilities of a ward superintendent.

The issues presented by the defendants for review are (1) whether the fact that temporary appointees and certain supervisory personnel participated in an in-service training program for Ward Superintendent and were issued training manuals, rendered void a civil service examination for that position; (2) whether the questions asked on the examination were arbitrary, capricious or contravened the rules of the Civil Service Commission and (3) whether the plaintiffs have standing to bring this action.

Patrick C. Mowen was the only plaintiff to testify. He stated that he had been employed by the Department of Streets and Sanitation in a clerical capacity since 1954. He became an acting superintendent of Sanitation for the 10th Ward and had been so employed since January 1, 1966. He said that on or before February 16, 1966, he learned through the newspapers that a Civil Service examination for Ward Superintendent of Sanitation would be held on April 2, 1966. The newspaper article quoted the president of the Civil Service Commission as stating that the scheduling of the examination had been held up pending distribution of a new manual covering duties of a Ward Superintendent. Patrick Mowen testified that he went to the Civil Service Commission office to obtain a manual, but even after identifying himself as a Ward Superintendent he was informed that no manuals were available. He then went to the Municipal Reference Library, the Chicago Law Institute, the main branch of the Chicago Public Library and to the Bureau of Sanitation and was told in each place that a copy of the manual was not available.

Patrick Mowen further testified that seminars were held for the examination prior to his appointment as an acting superintendent and that for this reason he was

unable to attend. He stated that he found 103 of the 200 questions had been given in the test from the manual. On cross-examination he said that he attended a lecture given by Supervising Ward Superintendent Frank Josemborski in March of 1966. When asked whether the Supervisor had a manual the witness stated he did not recall. Patrick Mowen said that he did not ask either Theodore Eppig, the Deputy Commissioner, or James Riley, the General Superintendent of Sanitation, for a manual.

Donald Mowen, Patrick's brother, testified that he was a timekeeper in the Streets and Sanitation Department of the City of Chicago. He stated that he also took the examination and that prior to his taking it he inquired at the Municipal Library in City Hall, the Civil Service Commission and the Chicago Public Library for a manual, but was told in each place that they did not have one.

Robert D. Quinlivan, a witness for plaintiffs, testified that for the past twenty years he had been employed in the field of sanitation and that for the past ten years he had been a Civil Service Ward Superintendent. He stated that in October of 1965 a study group was formed which included some fifty Ward Superintendents, five Division Superintendents, and five Field Supervisors. The group met for a series of in-service training conferences or seminars and during the meetings discussed the contents of the Ward Superintendent's Manual. Quinlivan testified that at one of the meetings Ira Podnos, Training Officer of the Civil Service Commission, held the manual over his head and said, "The basis of the next Ward Superintendent's examination will be drawn from this book." Mr. Quinlivan stated that substantially the same statement was made at least four or five other times during the course of the training program. The witness further testified that those who attended the in-service training conferences were given a copy of the manual. He stated that he received numerous requests

from candidates for the position of Ward Superintendent who had not been asked to attend the in-service training conferences for the use of his manual and though he tried to procure additional copies he was unable to do so. Quinlivan voluntarily, without charge or profit, conducted as many as a dozen preceptor classes for candidates during March 1966, wherein he used the manual. Attendance at the classes would range from eight to twenty-five persons. Permission to conduct these classes from James F. Riley, General Superintendent of the Streets and Sanitation Department, was originally granted and eventually withdrawn.

James S. Osborne, Secretary and Chief Examiner of the Civil Service Commission, was called as a witness for plaintiffs. He testified that 541 persons took the examination and that a passing grade was 70. The mental part of the examination consisted of 200 questions. There was also an experience and education section where points were given for an individual's experience in the sanitation field and his educational level. The mental part of the examination counted for 60% of the total grade and experience and education for 40%. Osborne stated that the manual was published in February 1965, and that 300 copies were printed. He did not know what was done with the manuals. He also stated that he had nothing to do with the selection of materials for the examination or in the preparation of the manual. The in-service training conferences and the preparation of the manuals, according to the witness, were handled by the department that conducts training for employees of the various branches of the Civil Service and is under the supervision of Mr. Willis.

Theodore C. Eppig, a Deputy Commissioner of the Bureau of Sanitation in the Department of Streets and Sanitation since 1958, testified on behalf of the defendants that a ward superintendent is responsible for collecting refuse from alleys and in assigning equipment

for sundry work such as controlling snow and ice and scattering rubbish. He is also in charge of a large number of employees. Eppig said that the supervisory in-service training program for Ward Superintendents was started in 1964 with the preparation of a manual and the preparation of the in-service training program. He stated that at that time he reviewed and made suggestions in the preparation of the manual as well as reviewing and approving the schedule of classes. The Deputy Commissioner said that the in-service training program was required of all ward superintendents whether civil service or temporary or acting superintendents. He said the program was devised to upgrade all city superintendents and to broaden their knowledge of the city and other departments. Eppig said that there were no discussions relating to the use of this manual for a future examination. When asked about the content of the Ward Superintendent's examination he stated that, in his opinion, the questions were practical and related to the duties and responsibilities of a Ward Superintendent and that the questions fairly tested the relative capacities and knowledge of the applicants taking the examination. He further testified that bulletins were issued regularly relating to the various duties and responsibilities of Ward Superintendents. He produced several of the bulletins and said that they contained answers to some of the questions given in the examination.

Dr. Charles A. Pounian, Personnel Director for the Civil Service Commission since 1960 and a witness for the City, testified that he was responsible for the examination program of the Civil Service. He said that meetings were held beginning in March of 1963 with persons from the training division staff of the Civil Service, his office, and the Department of Streets and Sanitation, to discuss the development of a general training program. Dr. Pounian said that the in-service training programs involved all of the departments in the City and that

various programs had been given long before the Ward Superintendent's in-service training conference was initiated. These in-service conferences, according to Pounian, are an integral part of the general training program.

Dr. Pounian further testified that he recommended that an examination for the position of Ward Superintendent be given. In making this determination he took into consideration the number of temporary appointees in the position of Ward Superintendent and several other factors. Pounian said that he took part in the preparation of the questions and that he examined the final list. The questions were divided into subsections covering supervisory and administrative material, public relations material, basic law, technical material relating specifically to the duties of Ward Superintendent, urban problems, computational skills, the municipal code and mechanical comprehension. On cross-examination Dr. Pounian was asked the following questions and he responded as follows:

> Q. Now, was the Ward Superintendent's Manual used in the questions that were asked?
> A. Yes.
> Q. How many questions in your judgment were taken from the Ward Superintendent's Manual?
> A. . . . [A]pproximately a hundred and eighteen items (out of 200) could be located in the . . . Manual, but in other sources as well.

Eighty-four questions relating to technical information, he said, were from the manual. Pounian stated that about thirty or forty manuals were placed in the Municipal Library on the 10th floor of the City Hall and in the Public Library to insure that people would have access to it. Fifty Manuals were given to the aldermen and to persons in the Department of Streets and Sanitation. He said that his office referred any person who inquired about the manual to the Municipal Reference Library

where he was told the manual was available. Of the 200 questions given in the examination twenty had to do with legal definitions. On redirect examination Dr. Pounian testified that the Manual was not printed for the purpose of distribution to candidates taking the examination on April 2, 1966, but rather was developed in conjunction with a training program for the Bureau of Sanitation and was to be used in the Ward Superintendent's Training Program.

Charles Willis, Supervisor of Training for the Civil Service Commission and testifying for the defense, stated that he supervised and directed staff effort in the development and conduct of training programs for city agencies. He said that he had been connected with about 160 in-service training programs since assuming his present position in 1954. Willis said he was the overall director and supervisor for the development of the Ward Superintendent's in-service training program and that in this capacity he consulted with the Bureau of Sanitation and other personnel. The Supervisor said that the format of the training program in question was a lecture discussion conference and that the program consisted of seven one-half day discussion periods during which twenty or so persons selected by the Bureau of Sanitation lectured. Willis said that the training program was in no way connected with or intended to be connected with the Civil Service examination given April 2, 1966. At the time the program was given in October of 1965, Willis said his office did not know that there was going to be a Ward Superintendent's examination. The manual was prepared under his general supervision and direction. He stated that he collaborated with the heads of the Bureau of Sanitation in the preparation of the manual. He also said that he was responsible for the distribution of the manuals. Copies were given to the Conference leaders, to the Mayor, to the fifty aldermen, to the Conference participants, to the Municipal Reference Library, to the

Chicago Public Library and to other officials. An exhibit was received in evidence showing where and to whom the manuals were distributed and the number distributed. Willis further testified that a bulletin was issued in April of 1965 announcing the form and content of the conference program and that the bulletin was sent to all City department heads and to all departmental training coordinators. This was done, according to Willis, as part of an informational program to acquaint City agencies with the training services available. Supervisor Willis stated that he never saw the questions contained in the examination and had nothing to do with the preparation of the examination. He denied that he stated at any time during the conferences that the manual would be a source for materials to be used in constructing the Ward Superintendent's examination or that the materials discussed in the conference would be used in the examination.

George Marro, a defense witness, testified that he had been an acting Ward Superintendent for fifteen months and that he had not participated in the October 1965 conferences. He said that he was given a copy of the manual on March 3, 1966, in the First Ward Yard of the Bureau of Sanitation and that at the same time a copy was also given to plaintiff Patrick Mowen. On cross-examination he said that he was number eleven on the examination list.

Thomas Devine, in rebuttal for plaintiffs, testified that he was a temporary Ward Superintendent and placed 126 on the examination list. He said that he was present on March 3, 1966, and that Patrick Mowen was not there.

The principal basis of plaintiffs' complaint is that temporary Ward Superintendent appointees and certain supervisory personnel enjoyed an unfair advantage over plaintiffs and others who took the examination making the test a closed examination, noncompetitive and, there-

fore, void. This contention is grounded on the fact that acting Superintendents, while taking part in an in-service training program, were given a copy of a manual containing the answers to over one-half of the questions in the examination. This manual, the plaintiffs contend, was not available to plaintiffs and others.

The October-December 1965 training program and the high percentage of questions drawn from the training manual might not have caused the Civil Service examination to be noncompetitive if these two factors were not coupled with a third factor, the scarcity of the Ward Superintendent's manual. The trial judge found that the manual was not widely circulated and in fact was not available to the general public including those candidates for the examination who were not invited to participate in the in-service training program. This finding came after Patrick Mowen, his brother, and Robert Quinlivan testified that they could not obtain copies of the manual after the in-service training conferences were held. Dr. Pounian and others, on the other hand, testified that thirty or forty manuals had been placed in the Municipal Library and in the Chicago Public Library. Clearly the availability of the manual was a disputed question of fact which was resolved in favor of the plaintiffs.

The crux of the trial judge's judgment is that the examination was not competitive as required by section 10–1–7 of the Illinois Municipal Code (Ill Rev Stats 1967, c 24, par 10–1–7) [1] because the manual published by the Civil Service Commission was distributed to select personnel at conference hearings and was denied to other candidates taking the examination. The trial court found

[1] The pertinent part of Ill Rev Stats 1967, c 24, par 10–1–7, provides:

All applicants for offices or places in the classified service . . . shall be subject to examination, which shall be public, competitive, and open to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character.

that this resulted in an unfair advantage to those having the benefit of the manuals and who also attended conferences where the manual's contents were discussed.

■ ■ We cannot say that this finding of the trial judge was manifestly against the weight of the evidence, especially when more than one-half of the questions asked in the examination were derived from the text of the manual. It is patently clear that the manual, far from being insignificant as the defendants imply, was indeed of the utmost value to any candidate who had the benefit of possessing it. We affirm, therefore, the trial court's determination and hold that the examination in question was rendered noncompetitive and void because the Ward Superintendent's manual was not equally accessible to all candidates for the examination.

Since we have concluded that the April 1966 Civil Service examination was rendered void because the Ward Superintendent's manual from which over fifty percent of the questions were drawn was not available to all of the candidates for the position of Ward Superintendent, we need not decide whether particular questions asked on the examination were arbitrary, capricious or contravened the rules of the Civil Service Commission as alleged by the plaintiffs.

■ Finally, plaintiffs argue that the court erred in finding that the Civil Service Commission did not contravene the Sanitarian Registration Act (Ill Rev Stats 1967, c 111½, par 551 et seq.) and that the Act does not apply to the duties and responsibilities of Ward Superintendents and those working under their supervision. It is urged that the Civil Service Commission should be enjoined from placing on the eligible list persons who are not "sanitarians." We have examined the Sanitarian Registration Act and are satisfied that the Act is not meant to be applied to Ward Superintendents and those working under them.

We further find no merit to the defendants' contention that plaintiffs have no standing to bring this action.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.